Clarence James **LOPEZ**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22525.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1968.

David S. Wine (argued), Tucson, Ariz.,
for appellant.

Rubin Salter, Jr. (argued) Asst. U. S.
Atty., Phoenix, Ariz., Edward E. Davis,
U. S. Atty., Tucson, Ariz., for appellee.

Before POPE and KOELSCH, Circuit
Judges, and BOLDT,* District Judge.

POPE, Circuit Judge:

Appellant, an Indian of the age of
sixteen years at the time here involved,
was charged with violation of Title 18
Section 1153, in that on or about May 4,
1967, he did kill one Xavier Rios, a Pa-
pago Indian, by forcibly and maliciously
striking and killing him. The decedent
was defendant's grandfather. Upon be-

---

* The Honorable George H. Boldt, District Judge, Western District of Washington, sitting by
designation.

ing advised by the court of his right to prosecution by indictment and trial by jury, defendant waived those rights and consented to being tried by the court by information charging delinquency pursuant to the provisions of Title 18 Sections 5031–5033. The defendant was thereafter tried by the court, without jury, found guilty of having violated a law of the United States, and committed to custody during the period of his minority in accordance with the provisions of the juvenile delinquency statutes of the United States. The appellant filed this appeal from the judgment of the district court.

The sole ground for the appeal is the alleged error of the district court in admitting in evidence, over the objection of the defendant, a statement made by him at the time of his being interrogated by FBI agents concerning the death of his grandfather.

The facts developed at the trial indicate that two federal officers went to the home of the defendant and at the time of their arrival he and his mother were there. The officers told the mother that they would like to talk to her son about the circumstances surrounding the death of Xavier Rios and asked whether she had any objections to their interviewing him. She said she had none. The officers then gave the defendant a written waiver of rights form [1] which he read aloud. The defendant was asked to talk the waiver over with his mother and to tell the officers in his own words what he thought the form meant. The defendant had trouble with the meaning of the word "coercion" used in the form and the officer explained "that this basically meant he was not being forced or made to make this statement or answer any questions." The officers then asked Clarence if he would mind telling them what took place to the best of his recollection on May 4th, the date of the crime in question. One of the officers testified that when this took place the defendant was not under suspicion. Later, in the same interview, when defendant's mother told her son to "tell these men the truth," he said, "I did it with another guy". At that point the officers again advised the defendant of

1. The written waiver form which defendant signed, read as follows:

"YOUR RIGHTS

Place: Tucson
Date: June 2, 1967
Time: 1:26 p.m.

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at anytime. You also have the right to stop answering at anytime until you talk to a lawyer.

"A lawyer will also be provided for you now, if you wish, by the Federal Public Defender's Office, Phoenix, Arizona, whom you may call at 253–7907.

"WAIVER OF RIGHTS

"I have read the statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

/s/ Clarence Lopez

"Witness: Donald W. Marsland, SA, FBI
San Xavier, June 2, 1967

"Witness: Alan H. Harrigal, SA, FBI
San Xavier, June 2, 1967 Time: 1:32 p.m."

his constitutional rights, of his right to an attorney, and then left him to discuss the matter with his mother. Upon their return, they asked him if he would like to have an attorney and he said: "Yes, I would like to have an attorney." After this reply, there was no further questioning of the defendant by these officers.

During the trial, although no objection was made to the admission in evidence of the waiver of rights form signed by the defendant, defendant's counsel objected to the questioning of the officer who took the statement on the ground that there had been no proper showing of the voluntary nature of the statement nor a suitable waiver of his right to counsel in connection with the making of the statement. However, on the court's overruling his objection, defendant asked and was granted leave by the court to question the witness further. At the end of this questioning counsel renewed his objection to its admission on the ground that the defendant was a minor of 16 years of age who per se did not have the ability to select, or ask for, or waive counsel, and that it was not permissible to admit the statement unless counsel had been appointed for him.

 Counsel for defendant argued during the trial and argues now that an inference of incapacity to waive counsel is raised by the mere age of an accused who is 16 or 17 years of age; that the burden to overcome this inference shifts to the Government in this case and that the Government failed to meet that burden. More particularly, counsel says that the failure of the Government to permit defendant to complete his statement: "I did it with another guy", or to explain that statement, reflects a rejection by the agents that the privilege against self-incrimination was knowlingly and understandably waived. Counsel for appellant urges on us the teachings of In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and other cases cited by him in support of his position.

We are very familiar with these cases and their holdings. See West v. United States, 5 Cir. 399 F.2d 467. There is nothing in this record to indicate that the defendant here did not understand the warnings given him and the waiver of rights signed by him. As a matter of fact, appellant says in his brief: "The log of the agents reflects that the defendant was warned of his rights" and there is an admission that "The mother was present and consented to the interrogation" and that "there were some words she did not understand", but nowhere is there any allegation that appellant did not understand what was going on about him.

That the court was carefully preserving the rights of the defendant is clearly indicated. The record shows that earlier in the trial the court fully weighed and sustained objection to the admission of another statement made by the defendant. He had then become a suspect, no attorney was representing him and the questioning was designed to elicit an admission from him that he was connected with the crime.[2]

The court found that the defendant "did understand his rights; that the agents were very, very careful to see that he did and all of the evidence in the case indicates he practically demonstrated his understanding of what they were trying to get across to him."

 A careful examination of the record and the totality of all the circumstances here, leads to the conclusion that the statement under attack was taken during the investigatory rather than the accusatory stage of the proceedings and that it was proper to admit it in evidence.

---

2. Thus, Mr. Manuel, a policeman, was asked by the Court: "Q. Did you, when you asked him to go to the trailer and when you started to talk to him, did you believe he might have had something to do with his grandfather's death? A. Yes. Q. Were you questioning him to get some admission or some evidence from him if he was so connected? A. Well, see, we do this to all the cases we have, most of them, serious cases. It is our normal procedure up there. THE COURT: The objection is sustained."

(See Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977). The defendant minor did have the ability to select counsel and ask for it; in fact he did so select counsel when it appeared to him there was need. The trial judge found that the defendant was advised of his rights and that any statement he made was made voluntarily, with understanding of his constitutional rights, and without any coercion, promises, or threats. These findings have substantial basis in the record.

Finding no merit in the points raised on this appeal, the judgment of the district court is affirmed.