COMMONWEALTH *vs.* RICHARD ROBERT MURRAY.

Essex. April 5, 1971. — May 19, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, QUIRICO, & BRAUCHER, JJ.

*Constitutional Law*, Assistance of counsel, Admissions and confessions, Waiver of constitutional rights, Search and seizure. *Waiver. Practice, Criminal*, Assistance of counsel. *Evidence*, Admissions and confessions, Of test, Clothing. *Search and Seizure*.

There was no error in the admission in evidence at a criminal trial of statements freely and voluntarily made by the defendant to police after receiving the warnings required by *Miranda* v. *Arizona*, 384 U. S. 436, and while not under arrest and in circumstances constituting a waiver of the right to remain silent and to have counsel present. [544]

Events occurring from the time on the day after a murder that the defendant was first taken to a police station to the time two days later when he made inculpatory statements in the absence of his lawyer in reply to questions of a police officer, who knew that the defendant was represented by a lawyer and had requested when first at the station that no questions be asked until his lawyer arrived, did not permit a finding that the defendant had waived his constitutional rights in making the inculpatory statements, and the admission thereof in evidence at his trial was reversible error. [546]

There was no error in a murder case in the denial of a pre-trial motion to suppress as evidence clothing of the defendant seized pursuant to a search warrant, even if use of the warrant merely to seize evidence was not authorized by G. L. c. 276, § 1, as appearing in St. 1964, c. 557, § 1, where it appeared that the affidavit accompanying the warrant amply supported a finding of probable cause for a belief that the evidence sought would aid in conviction of the defendant. [547]

Commonwealth *v*. Murray.

Misrepresentations, not shown to be deliberate, which appeared in an affidavit presented in support of a search warrant and which could have been caused by a change in testimony or by inadvertence or mistake did not render the warrant invalid. [547–548]

There was no violation of the constitutional rights of the defendant in a criminal case with respect to clothing seized in his apartment where police merely sought clothing listed in a search warrant and seized clothing substantially similar to the clothing listed. [548]

There was no merit in contentions by the defendant at a murder trial that the results of benzidine reagent tests on clothing taken from his apartment were inadmissible [549]; or that his counsel should have been present when the tests were performed. [549–550]

There was no prejudicial error at a criminal trial in the exclusion of a technically admissible question of the defendant to his expert where the information sought was adduced through subsequent questions. [549]

At the trial of an indictment for murder, there was no error in the admission in evidence of bloodstained clothing of the defendant which his wife identified to police as worn by the defendant when he came home on the day of the crime. [549]

INDICTMENT found and returned in the Superior Court on May 21, 1970.

A pre-trial motion to suppress was heard by *Sullivan,* J., and the case was tried before him.

*Paul Resnick* for the defendant.

*Peter F. Brady,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant appeals under G. L. c. 278, §§ 33A–33G, from a conviction of murder in the first degree of Delores Dumas on November 16, 1969.   The jury recommended the death penalty be not imposed.

The evidence pertinent to the issues is summarized.   On the evening of November 15, 1969, the defendant while in a Salem café was introduced to the victim Delores Dumas by one Henrietta MacNeill.   Several other witnesses saw the defendant and Mrs. Dumas together on the evening of November 15 and the early hours of November 16.   Mrs. Joan Collins, who lived on the second floor beneath Mrs. Dumas's apartment at 22 Liberty Street, Salem, testified that about 3 A.M. on November 16, 1969, she awoke and heard a noise "somewhere on the back porch" which was connected with a rear entrance.   At 3:50 A.M. Police Sergeant

Coughlin, while on duty, saw the defendant carrying a bottle of liquor in a bag and walking toward the Lincoln Hotel in Salem. The defendant told Coughlin, who remained in his cruiser, that he had been at his girl's house. On November 16 the defendant, who had been living at the Lincoln Hotel for two weeks, went back to live with his wife at 25 Roslyn Street, Salem. About 7:20 A.M., November 16, firemen who had been called to extinguish a fire in Mrs. Dumas's apartment found her naked body with multiple stab wounds. Wax was found on several areas of the body. Her blood alcohol content indicated acute intoxication at the time of death. The defendant's fingerprint was found on a glass in the Dumas apartment, together with other unidentified prints.

State police chemist Joseph V. Lanzetta performed a benzidine reagent test on shoes and clothing taken from the defendant's apartment and found blood on the shoes, pants and the zippered front surface, sleeves and pockets of a coat. He could not tell if it was human blood. On November 19 a benzidine test was performed on the defendant's body with a positive reaction revealing the presence of blood on the defendant's arms, thighs, stomach, legs and feet. Further tests and examination revealed the presence of wax on the bottom of the shoes consistent with wax found in the victim's apartment.

1. On November 17 three policemen went to the defendant's apartment at Roslyn Street and took him to the Salem police station in a police car. On their way to the station the defendant, who was not then under arrest, was given the warning required by *Miranda* v. *Arizona*, 384 U. S. 436. In reply to questions by Officer Richard McDonald of the State police and Inspector John Moran of the Salem police, the defendant told them that he was with Mrs. Dumas on the night of November 15 but did not go to her apartment. A few minutes after arriving at the station, he called his wife and said, "Would you get Sam (the defendant's attorney Sam Zoll), and have Sam come down here." Inspector Moran attempted to question the defendant further

but the latter said, "I will talk with you when Sam Zoll gets here. Do me a favor. Let me talk to Sam first."

After receiving the telephone call from her husband at 9:30 P.M. on November 17, the defendant's wife attempted unsuccessfully to reach Mr. Zoll. She then went to the police station but the police would not permit her to see her husband who was "under interrogation." She later contacted Mr. Zoll who went to the police station.

Mr. Zoll arrived at the police station at approximately 11 P.M. on November 17 to represent the defendant. Inspector Moran spoke to Mr. Zoll at that time and knew that he was representing the defendant. Thereafter the defendant was "permitted to leave."

The judge admitted evidence of the conversation of the defendant with the police from the time the police came to his home on November 17 to the time he telephoned his wife asking her to call his lawyer, Mr. Zoll. The statements admitted consisted substantially of the defendant's denial that he committed the crime although admitting he was with the victim on November 16. The defendant contends that this was error. We do not agree. At the request of the police, the defendant accompanied them to the station. Shortly after being given the *Miranda* warning, the defendant answered questions by the police. The statements were given freely and voluntarily by him in circumstances which could be found to constitute a waiver of his right to remain silent and to have a lawyer present. *Miranda* v. *Arizona, supra.* See *Commonwealth* v. *Scott,* 355 Mass. 471, 478–479. No further evidence was offered of conversations, if any, between the police and the defendant on November 17.

On November 19, the police again went to the defendant's apartment. They asked the defendant's wife what clothes her husband was wearing when he came home on November 16. She identified the clothes and the police took them from the closet. In the presence of the policemen the defendant asked his wife to call Mr. Zoll, but she could not make the call then because a policeman was using the

telephone. The police took her husband from the apartment and as he was leaving he again told her to get in touch with Mr. Zoll.

After the defendant arrived at the police station on November 19, he had a conversation with Inspector Moran in the men's room during which he made some inculpatory statements, without his lawyer present.[1] After the voir dire, the court permitted substantially the same testimony to be given by Moran before the jury, over the objections and exceptions of the defendant. These inculpatory statements were made by the defendant in reply to questions put to him by Moran. Moran knew from his participation in the events of November 17 described above that the defendant was represented by a lawyer, and that on that date he had requested the police not to question him until his lawyer arrived. "The mere fact that he may have answered some questions or volunteered some statements on his own [on November 17] does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." *Miranda* v. *Arizona,* 384 U. S. 436, 445.

Since the inculpatory statements of the defendant on November 19 were made in the absence of his lawyer, their admissibility depends upon whether or not the defendant waived his rights to remain silent and have counsel present at that time. A defendant may waive these rights, "provided the waiver is made voluntarily, knowingly and in-

---

[1] At a voir dire Moran testified that the defendant went into the men's room at the police station and Moran accompanied him. Moran further testified as follows: "I said, 'Why did you light that fire, Rich, to cover up the evidence?' And he said, 'I guess so.' I said, 'You must have had all your clothes off when this happened.' He said, 'I guess I did.' He said (meaning Lanzetta) [the State police chemist], 'I was all covered with blood.' 'Did you run down the stairs about 3:00 a.m. or did you walk?' He said, 'I walked.' 'When you ran into Sgt. Coughlin approximately 3:40 a.m., were you just coming from her house then?' He said, 'Yes.' 'Do you think you need help, Rich?' He said, 'I should have been put away two months ago.' I said, 'Have you slept, Rich?' He said, 'No. This thing has bothered me.' I said, 'This thing has bothered you, hasn't it?' He said, 'I had to tell somebody or I would really go crazy.' I said, 'What did she do to provoke you?' He said, 'I don't know.' I said, 'Did you give her money?' And he said, 'No.'"

telligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda* v. *Arizona,* 384 U. S. at 444-445. When inculpatory statements made by a defendant in circumstances such as in the present case are offered in evidence against him, "a heavy burden rests on the . . . [prosecution] to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* v. *Arizona, supra,* at 475.

Considering the record of all of the events which occurred from the moment the defendant was first taken to the police station on November 17 to the time he made his inculpatory statements to Inspector Moran on November 19, the evidence does not permit a finding that the defendant waived his constitutional rights in making the statements on the latter date. The burden of proving such a waiver was on the Commonwealth, and on the record the burden was not sustained. The admission of the defendant's inculpatory statements of November 19 was therefore error which requires a new trial.[2] See *Commonwealth* v. *McKenna,* 355 Mass. 313, 327. See also *People* v. *Paulin,* 33 App. Div. 2d (N. Y.) 105, 110, affd. 25 N. Y. (2d) 445.

We will now deal with the defendant's other contentions which may be raised at a retrial.

2. The defendant contends that the trial judge erred in denying his motion to suppress the evidence obtained pursuant to search warrants. He claims that the warrants were issued for reasons not authorized by G. L. c. 276, § 1, as appearing in St. 1964, c. 557, § 1, which provides in part that a search warrant may issue for "property or articles which are intended for use, or which are or have been used,

_____

[2] The defendant also claims that there was no evidence that he was informed of his right to use the telephone as required by G. L. c. 276, § 33A. Violation of § 33A, if productive of harm, might be ground for sustaining exceptions. *Commonwealth* v. *Bouchard,* 347 Mass. 418, 421. Evidence in the present case, however, indicates that on November 17 the defendant asked to make a telephone call from the police station and was permitted to call. See *Commonwealth* v. *McGaffigan,* 352 Mass. 332.

as a means or instrumentality of committing a crime, including, but not in limitation of the foregoing, any property or article worn, carried or otherwise used, changed or marked in the preparation for or perpetration of or concealment of a crime." Section 1 also states, "Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law." The defendant argues that the search warrants could not be used to secure mere evidence, in the form of clothing, for use in a criminal proceeding. This contention has no merit. The Supreme Court recently has held that a distinction prohibiting seizure of items of only evidential value as opposed to seizure of instrumentalities is not required by the Fourth Amendment. *Warden, Maryland Penitentiary* v. *Hayden,* 387 U. S. 294. The Fourth Amendment does not bar a search for evidence to prove the commission of a crime provided there is probable cause for the belief that the evidence sought will aid in a particular apprehension or conviction. *Id.* at 306–307. The affidavit accompanying the search warrant for 25 Roslyn Street provides ample support for a finding of probable cause. See *Commonwealth* v. *Ellis,* 356 Mass. 574, 578. General Laws c. 276, § 1, specifically refers to "article worn . . . in the . . . perpetration of . . . a crime." There is no prohibition against seizure of articles of clothing to be used for evidentiary purposes where, as here, there is a nexus between these articles and the crime. See 30 Smith, Massachusetts Practice, § 155.

The defendant also claims that the affidavits presented in support of the search warrants contain two misrepresentations of material fact which render the warrants invalid.[3]

---

[3] Paragraph 2 (12) of the affidavits states, "On Wednesday November 18, 1969, Dr. George Curtis, pathologist stated that a smear of the uterus indicated the presence of semen and concluded that Delores Dumas had had sexual intercourse." Dr. Curtis testified at the trial that the test for semen was negative. Paragraph 2 (6) of the affidavits states that Mrs. Joan Collins, living in the apartment under the victim, "reported that she had heard someone outside her door at 3:30 A.M. on November 16, 1969." Mrs. Collins testified at the trial that she could not identify the sound and never said the noise was made by a person.

Assuming that a deliberate misrepresentation in an affidavit will render a search warrant invalid (see *Commonwealth* v. *Perez,* 357 Mass. 290, 301–302) it does not appear that *deliberate* misrepresentations were made. At the pre-trial hearing on the motion to suppress, Officer Leo McNulty, the affiant, testified that Mrs. Collins said, "I just heard someone out there." Here the discrepancy could have been caused by a change in testimony. The misstatement as to the presence of semen may have resulted from inadvertence or mistake. Factual inaccuracies not going to the integrity of the affidavit do not destroy probably cause for a search. *Rugendorf* v. *United States,* 376 U. S. 528, 532–533.

The defendant argues that the warrants were improper because they did not describe with particularity the things to be seized, as required by the Fourth Amendment.[4] When Officer McNulty entered the defendant's apartment at 25 Roslyn Street, with the search warrant, he asked the defendant's wife what clothes the defendant wore on November 16. McNulty then took clothing identified by the defendant's wife.[5]

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron* v. *United States,* 275 U. S. 192, 196. See *Stanford* v. *Texas,* 379 U. S. 476. In the instant case, the police did not engage in a general search; they sought clothing listed in the warrants and seized articles of clothing substantially similar to those listed. (See footnotes 4 and 5.) There was no constitutional violation. "Every effort should be made to draft each application in accordance with constitutional and statutory requirements but the rigors of an average criminal investigation

---

[4] The search warrants list the following clothing: "1 Men's greyish colored sport coat; 1 Men's pair of dark colored trousers; 1 Men's shirt; 1 Men's pair of shoes; 1 Set of men's underwear; 1 Pair men's socks; 1 Men's greenish colored ¾ coat."

[5] "1 Men's greenish brown ¾ length outer-coat (corduroy); 1 Men's brown corduroy jacket; 1 Men's suit (grey) coat, vest, pants; 1 tan Levis; 1 yellow sport shirt (Men's); 1 Pr. of Men's black loafers."

are not to be intensified by a pecksniffian attention to non-crucial detail on review. Basic constitutional rights are not abraded by such an approach in the review of warrants." *Commonwealth* v. *Von Utter,* 355 Mass. 597, 600. See *Commonwealth* v. *Cuddy,* 353 Mass. 305, 309; *Commonwealth* v. *Wilbur,* 353 Mass. 376, 381; *Commonwealth* v. *Daly,* 358 Mass. 818. Compare *United States* v. *Alloway,* 397 F. 2d 105 (6th Cir.) (where the voluntary consent of the defendant's wife to the taking of two dark suits from the defendant's house validated the seizure of the suits even though the suits were not specifically described in the search warrant). See also 30 Smith, Massachusetts Practice, § 179.

3. The defendant claims that the results of the benzidine reagent test were inadmissible. The short answer is that this court has recently sustained use of the benzidine test. *Commonwealth* v. *Appleby,* 358 Mass. 407, 413. Moreover, that a positive test might result from nonhuman blood or some other substance goes to the weight of the evidence rather than its admissibility.

There was no prejudicial error in the exclusion of the defendant's question to his expert as to what reaction he obtained from a benzidine test on human blood. Although this question was technically admissible no harm resulted because the information sought was adduced through subsequent questions. See *Commonwealth* v. *Valleca,* 358 Mass. 242, 246, 247.

4. The defendant claims error in the admission in evidence of his clothing because it had not been identified as having been worn by him at the time of the crime. The defendant's wife testified that she identified the clothes to the police as those worn by her husband when he came home on the day of the crime. Moreover there was evidence of blood on the clothing. There was no error. See *Commonwealth* v. *Dougherty,* 343 Mass. 299, 306–307 (testimony of blood-stained clothing allowed even though it was not shown that the articles were worn by the defendant at the time of the crime); *Commonwealth* v. *Robertson,* 357 Mass. 559, 563.

5. There is no substance to the defendant's contention

that he was entitled to the presence of his counsel when the benzidine test was performed. See *Schmerber* v. *California*, 384 U. S. 757.

6. The trial judge properly denied the defendant's motion for a directed verdict. See *Commonwealth* v. *Perez*, 357 Mass. 290, 303; *Commonwealth* v. *Appleby*, 358, Mass. 407, 414.

*Judgment reversed.*
*Verdict set aside.*