COMMONWEALTH *vs.* JOHN C. CAIN.

Middlesex. November 1, 1971. — February 24, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Constitutional Law,* Waiver of constitutional rights, Assistance of counsel, Admissions and confessions. *Waiver. Practice, Criminal,* Assistance of counsel. *Evidence,* Admissions and confessions.

The Commonwealth failed to sustain its burden of establishing that a fifteen year old boy in custody at a police station knowingly and intelligently waived his constitutional rights to remain silent and to have counsel before questioning by police in which he made an allegedly incriminating statement where it appeared that he was frightened, that he was unfamiliar with police practices, that when asked by the police before the questioning whether he waived his rights and wished "to talk to" the police he replied "Yes" and "I didn't do anything," and that his father was denied access to him at the police station until after he had made the allegedly incriminating statement. [227–229]

INDICTMENT found and returned in the Superior Court on July 11, 1969.

The case was tried before *DeSaulnier*, J.

*Albert L. Hutton, Jr.*, for the defendant.

*Terence M. Troyer*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   This is an appeal under the provisions of G. L. c. 278, §§ 33A–33G, as amended.   The defendant, a minor, was convicted on November 7, 1969, of the carnal abuse of a child and committed, under G. L. c. 123A, to the treatment center at the Correctional Institution at Bridgewater for observation and treatment.   Subsequently, after a hearing on July 9, 1970, the judge found the defendant to be a sexually dangerous person, and in lieu of sentence, ordered him committed pursuant to the statutory provisions (G. L. 123A, § 5) to the treatment center at the Correctional Institution at Bridgewater for an indeterminate period.

The offence involved in this case occurred on May 6, 1969.   The victim of the alleged assault, then seven years old, was playing with her younger sister and a five year old girl in the backyard of a residence in Burlington.   A boy described as having been thirteen, fourteen, or possibly fifteen years of age, around five feet six inches tall, with dark hair and glasses, approached from the woods behind the yard, beckoned the victim over, and sexually assaulted her.   The defendant at the time of the incident was fifteen years old and otherwise fitted the description of the assailant.   Four days later, the defendant was arrested and taken to the Burlington police station and, after an interview with the police, he was charged with the offence.   He was indicted and brought to trial in the Superior Court.

The defendant urges as error the ruling of the judge, after a voir dire hearing, that the defendant knowingly and intelligently waived his *Miranda* rights, and that an inculpatory statement by him to police during an in-custody interrogation was admissible evidence.   The follow-

ing evidence presented at the voir dire and at trial bears
upon this contention.

Lieutenant Arnold R. Christiansen and Detective Ger-
ald Crocker of the Burlington police placed the defendant
under arrest at his house on May 10, 1969, and proceeded
to take him by police cruiser to the Burlington police sta-
tion. Detective Crocker testified that he thought the de-
fendant was fifteen or sixteen years old; that his parents
were not at home at the time of the arrest; and that Lieu-
tenant Christiansen radioed the police station to have a
cruiser sent to notify the defendant's mother and father
who, they were told, were shopping at a market.

Detective Crocker's testimony was that the police ad-
vised the defendant of his rights on two occasions: in the
cruiser en route to the police station and in a basement
office at the police station.[1]    According to Detective
Crocker, on the first occasion when the defendant was
asked if he understood the warning, the defendant did not
speak but "nodded his head" affirmatively. In Lieuten-
ant Christiansen's version, the defendant was asked
"whether or not he would waive the rights, and he stated
yes; and he further stated that, 'I didn't do anything.' "
As to the second warning, Detective Crocker testified
that this time Lieutenant Christiansen was not present.
According to Detective Crocker, he asked the defendant,
"Understanding these rights, do you wish to talk to us

[1] We assume for purposes of this decision that the police gave the
required *Miranda* warning of both occasions. As to the first warning,
Lieutenant Christiansen testified that he "advised . . . [the defendant]
that he was under arrest and charged with the crime of rape, and as
a result of this, he had the right to communicate with bail attorney,
friends or family, and that, further, that anything that he said would
be used against him, and that he had the right to be represented by
counsel, and that if he couldn't afford counsel, counsel would be pro-
vided . . . for him, by the court." Detective Crocker's version of the
first warning was in substantial agreement with his superior's account.
As to the second warning when Lieutenant Christiansen was not
present, Detective Crocker testified as follows: "I advised him that he
had to have — he had the right to have counsel present; advised him
that anything he said could and would be used against him in a court
of law; and I advised him that if he could not afford counsel, counsel
would be provided for him." Although the defendant recalled only the
second warning, he did not deny that the officers might have given a
prior warning.

now?" and the defendant answered, "Yes," and "I didn't do anything." Relative to events at the station, the defendant testified that he had never been arrested before; that he was unfamiliar with police practices and criminal rights; that he was "frightened . . . confused . . . [and] didn't know what was happening"; and that he remembered being given a warning only at the police station and not in the cruiser. Detective Crocker in his testimony agreed that the defendant was in a "frightened" state of mind, and he also stated that "everything was fast-moving" at the police station.

According to Detective Crocker, when Lieutenant Christiansen came to the office, Detective Crocker went upstairs to the desk where he saw a man who he assumed was the defendant's father, but he did not communicate with the man, and within two or three minutes he returned to the basement office. Lieutenant Christiansen testified that he questioned the defendant and that, at some point, before or after Detective Crocker's return, he asked the defendant, "Is this the first time that you have ever done anything like this?" To this question the defendant replied, "This is the first time . . .. I have never done it before . . . do I have to go to court?" Detective Crocker testified that he overheard the inculpatory statement, but in his version, the defendant said, "I did it. What's going to happen to me now?" The testimony of both officers indicates that the defendant's father was upstairs in the police station while Lieutenant Christiansen was questioning the defendant, but that the father was not permitted to see his son until after the alleged statement. The father himself testified that, although he asked repeatedly to see his boy, he had to wait from fifteen to twenty minutes before being brought to the basement office. Neither at voir dire nor at trial was any written notation produced of the defendant's alleged waiver or of his alleged statement.

In the circumstances of this case, we conclude that the Commonwealth has not sustained the burden of establishing that the defendant made a knowing and intelligent

waiver of his rights required before police may conduct
an in-custody interrogation without the presence of coun-
sel. *Miranda* v. *Arizona,* 384 U. S. 436, 475. *Common-
wealth* v. *McKenna,* 355 Mass. 313, 323. *Commonwealth*
v. *Murray,* 359 Mass. 541, 545. Fifth and Sixth Amend-
ments to the Constitution of the United States as applied
to the States by the Fourteenth Amendment. " '[C]ourts
indulge every reasonable presumption against waiver' of
fundamental constitutional rights." *Johnson* v. *Zerbst,*
304 U. S. 458, 464. "When inculpatory statements made
by a defendant in circumstances such as in the present
case are offered in evidence against him, 'a heavy burden
rests on the . . . [prosecution] to demonstrate that the
defendant knowingly and intelligently waived his priv-
ilege against self-incrimination and his right to retained
or appointed counsel.' *Miranda* v. *Arizona, supra,* at
475." *Commonwealth* v. *Murray, supra,* at 546. When,
as here, the defendant is a fifteen year old minor, courts
proceed with "special caution." *In re Gault,* 387 U. S. 1,
45. *Williams* v. *Peyton,* 404 F. 2d 528, 530–531 (4th
Cir.). See *Haley* v. *Ohio,* 332 U. S. 596, 599–600; *Galle-
gos* v. *Colorado,* 370 U. S. 49, 54–55.

We cannot say in the totality of circumstances present
in this case that the Commonwealth has sustained this
burden. Neither officer who interrogated the defendant
made a written notation [2] of the defendant's responses to
the first or to the second *Miranda* warning, and there was
conflicting testimony as to their nature. Assuming ar-
guendo that, on either or both occasions, the defendant
was asked in a straightforward manner whether he
waived his rights, and he answered, "Yes. I didn't do
anything," we cannot agree that this response evinces
with sufficient clarity an understanding by the defendant
of his fundamental rights and an intelligent waiver of
those rights. See *Commonwealth* v. *Guillory,* 356 Mass.
591, 593. The mere fact that, subsequently under inter-
rogation, the defendant made a statement, allegedly in-

_____

[2] We do not here imply that a written notation or record is a pre-
requisite to the admission of an inculpatory statement.

culpatory, does not, of course, without more, give rise to a presumption of a valid waiver. *Miranda* v. *Arizona*, *supra*, at 475. Furthermore, the defendant was only fifteen at the time of the interview; he had had no prior experience with police practices; his father was denied access to him; and by the testimony of Detective Crocker as well as the defendant, he was in an agitated state throughout the interview. Although age alone is not a controlling factor (*West* v. *United States*, 399 F. 2d 467, 468, 469 [5th Cir.]; see *Lopez* v. *United States*, 399 F. 2d 865, 866–867 [9th Cir.]), the age of the present defendant, combined with the other circumstances of this case, did not warrant a ruling that the defendant intentionally relinquished or abandoned his right to counsel and to remain silent. See *United States ex rel. J. B.* v. *Shelly*, 305 F. Supp. 55, 58–60 (E. D. N. Y.), affd. 430 F. 2d 215, 218–219 (2d Cir.) ; *Commonwealth* v. *Taper*, 434 Pa. 71. Compare *Michaud* v. *Robbins*, 424 F. 2d 971 (1st Cir.) (pre-*Miranda*).

Inasmuch as the totality of circumstances in this case is insufficient to show a knowing and intelligent waiver, we need not consider the defendant's further contention that a boy of fifteen years can never waive his right to counsel in the absence of his father, mother, or someone in loco parentis.[3] Nor do we consider the defendant's

---

[3] At least in the present circumstances, we think that this frightened and confused fifteen year old defendant, who was being held in the basement of the police station, should have been permitted the opportunity to consult his father who was upstairs in the station and had requested to see his son. The *Miranda* warning that the boy had a right to consult a lawyer was hollow indeed when he was denied access to his father who, practically speaking, was the only avenue through which he could effectively evaluate and, if he wished, exercise the right to counsel. See *Gallegos* v. *Colorado*, 370 U. S. 49, 54 (adult advice may be necessary to put juvenile defendant on more equal footing with police) ; *In re State in Interest of Carlo*, 48 N. J. 224, 240–241 (boys of thirteen and fifteen lack judgment to appreciate harm to themselves by yielding to insistent police questioning). See also *Matter of Nelson*, 58 Misc. 2d (N. Y.) 748, 750–751 (Family Ct., Bronx County, N. Y.) ; *Story* v. *State*, 452 P. 2d 822, 824–825 (Okla. Cr. Ct. App.). Compare *Lopez* v. *United States*, 399 F. 2d 865, 867 (9th Cir.) (waiver held effective in case involving sixteen year old defendant where mother was present and consented to the interrogation).

other assignments of error.[4] The issue they present may not arise at all, or at least not in the same form, upon any new trial which may be had in this case.

No sentence having been imposed the verdict is set aside and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[4] These relate principally to the ruling of the trial judge permitting in-court identification of the defendant by the victim and another young witness and to the identification procedures followed at trial over the defendant's objections; but also assigned as error were the allowance of a certain leading question, the admission of certain opinion evidence, the exclusion of the testimony of four defence witnesses, and the judge's admonitions to the defence counsel made in the presence of the jury.