Paul P. E. Bookson, J.
The respondent, Hector G, is charged with committing acts, which if done by an adult would constitute the crimes of murder, criminally negligent homicide, manslaughter, and reckless endangerment.
This court held a Huntley hearing, to determine whether a statement made by the respondent should be suppressed. Many witnesses appeared for both sides and lengthy posttrial *1082 memoranda of law were submitted. The court makes the following findings of fact in reaching its decision.
On February 8, 1977, an alleged crime was committed which resulted in the death of the victim. The police immediately launched an intensive investigation which ultimately led to the arrest of the respondent as the alleged perpetrator of the crime.
On February 10, 1977 the police received information that several boys had been seen in the vicinity where the crime had occurred. At approximately 5 p.m. on February 10, 1977 the respondent and several other boys were approached by three detectives of the New York City Police Department at the apartment building in which they live. After some preliminary questioning, the boys were asked to come to the precinct for further questioning. Before being taken to the precinct, however, the boys were allowed to go to their own apartments to change into the clothes they had been wearing on February 8, 1977. The respondent went to his apartment unescorted and returned to the company of the police to be taken to the precinct. His parents were not contacted at this time. All the boys, including the parents of one of them, were taken to the precinct where they were each placed in a separate room for questioning. Although the respondent is 13 years old the room in which he was initially questioned was not one which had been designated by the Appellate Division as suitable for the questioning of juveniles. The respondent was questioned as to his activities on February 8, 1977. The respondent testified that when he denied any involvement in the incident, he was then told by the detective that if he told the "truth”, he would be out in a "jiffy.” At 6:48 p.m. the respondent made an incriminating statement which was reduced to a writing approximately an hour later by the detective and signed by the respondent. The respondent was removed to the area designated for the questioning of juveniles and the police attempted to locate his parents. The police were successful and the parents arrived at the precinct at approximately 8:30 p.m. There is no question that the respondent was not informed of his Miranda warnings prior to this initial statement; however, this statement was not the subject of this hearing.
After Mr. and Mrs. G arrived at the precinct, only Mrs. G was permitted to see her son. Hector and his mother conversed for a few minutes, and then, as her son sat next to her, the detective read the Miranda rights to Mrs. G. The detective *1083 testified that after each question, he asked Mrs. G if she understood and when she replied in the afiirmative he wrote yes next to the question and had her initial it. He also had her sign her name at the bottom of the card. Mrs. G testified that she merely shrugged but did not in fact comprehend the Miranda rights. All the rights were given to Mrs. G in English. Although the respondent was sitting next to his mother, the reading of the Miranda rights was directed to Mrs. G and not to the respondent. No response was elicited from the respondent. Thereupon another statement was taken from the respondent and signed by Mrs. G and the respondent. Both the first and second statements were taken from the respondent by the same detective.
There was conflicting testimony as to Mrs. G’s understanding of English and the court finds that Mrs. G has a limited understanding of English.
CONCLUSIONS OF LAW
In its landmark decision dealing with juvenile rights, the United States Supreme Court stated: "If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.” (Matter of Gault, 387 US 1, 55.) The court also emphasized not only the desirability of the presence of a parent during interrogation, but also the competence of the parent to fully apprise the circumstances and to appreciate the consequences of any statement their child might make.
In Miranda v Arizona, the United States Supreme Court held that an individual must knowingly and voluntarily waive his constitutional privilege against self-incrimination before the police can submit him to a "custodial interrogation.” (Miranda v Arizona, 384 US 436, 444.) The United States Supreme Court in its most recent decision involving Miranda warnings, stated: "Our decision in Miranda set forth rules of police procedure applicable to 'custodial interrogation.’ 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ 384 U.S., at 444. 86 S. Ct., at 1612.” (Oregon v Mathiason, 429 US 492, 494.)
*1084 In People v Rodney P. (21 NY2d 1, 9) the Court of Appeals held that "custody occurs if the suspect is physically deprived of his freedom or action in any significant way or is led to believe, as a reasonable person, that he is so deprived.” (see, also, People v Yukl, 25 NY2d 585.)
In a pre-Gault decision, the United States Supreme Court, in holding the confession of a 15-year-old involuntary stated that juveniles "cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overcome and overwhelm a lad in his early teens.” (Haley v Ohio, 332 US 596, 599.)
It is the conclusion of this court that the first statement rendered by Hector G was the product of a custodial interrogation. Adolescents are more likely to succumb to the inherently coercive nature of police interrogation and the police should apply extra caution when dealing with juveniles. By applying the reasonable belief test, it is clear from the testimony and evidence that the respondent believed himself to be in the custody of the police and he would not be permitted to leave until he told the "truth”. A 13-year-old boy, with no previous experience with the police, taken to a police station without the benefit of parental guidance and subject to the pressures of an authoritarian atmosphere is more likely to reasonably believe that he is deprived of his freedom of movement.
Although the initial statement is not being offered into evidence, if it had been, this court would have to suppress it as the respondent was never given his Miranda warnings and no parent was present. However, there is no question that once the respondent had incriminated himself, he was in custody and detained by the police.
In United States v Bayer (331 US 532, 540) the Supreme Court stated: "after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good.”
When a prior confession is found to be invalid, a subsequent confession, even if proper Miranda warnings are given, cannot be admitted until it is determined that "no psychological advantage [to the interrogators] flowed from the [prior admission],” (United States v Knight, 395 F2d 971, 975.)
*1085 In the case at bar, the same detective who exacted the first confession from the respondent exacted the second confession from the respondent within a few hours of each other.
In the Matter of Aaron D. (30 AD2d 183) the court held that the requirements of due process include adequate notice to the child and his parents of the charges and of his rights. The child "should not be questioned until he and at least one of his parents are notified of his right to remain silent and of their right to counsel.” (30 AD2d, at p 185; emphasis added.)
Although the detective read the Miranda rights to Mrs. G and elicited a response from her, at no time did the respondent himself knowingly and intelligently waive his rights. There was no testimony that the rights were given to the respondent directly and no testimony that the respondent waived his rights. The warning card was initialed and signed by the mother, not by the respondent. The respondent substantially reiterated the same statement he had made previously to the detective.
The burden of proving the voluntariness of a confession is on the People and it must be proven beyond a reasonable doubt. (People v Huntley, 15 NY2d 72; People v Valerius, 31 NY2d 51.)
Albeit the police failed initially to give the respondent his Miranda rights and in turn get a waiver of those rights, the police compounded their error by failing prior to the second interrogation to inform the respondent of his rights and insure that he knowingly, intelligently, and voluntarily waived those rights. Miranda rights belong to the individual; they are his constitutional safeguard, and cannot be waived by any one other than the individual. While the presence of a parent is deemed advisable, indeed even necessary, in order for a juvenile to fully appreciate what his rights are and the consequences of waiving those rights, they are the rights that inure to the juvenile and it must be the juvenile that waives them.
The court is constrained to find under the totality of the circumstances that the burden of proving the respondent knowingly, intelligently, and voluntarily waived his Fifth Amendment rights has not been met beyond a reasonable doubt. The motion to suppress the confession is hereby granted.