**STATE of Maine**

v.

**Dennis HARDING, Jr.**

Supreme Judicial Court of Maine.

Oct. 20, 1978.

Joseph M. Jabar, Dist. Atty., J. William Batten (orally), Robert J. Daviau, Asst. Dist. Attys., Augusta, for plaintiff.

J. Michael Talbot (orally), Philip S. Bird, Fairfield, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

ARCHIBALD, Justice.

Dennis Harding, Jr., having been indicted, accorded a jury trial and convicted of Burglary (17–A M.R.S.A. § 401) and Theft (17–A M.R.S.A. § 353), now appeals from both convictions, which we deny.

I

■ Prior to trial appellant had filed motions for (1) "Change of Judge," and (2) change of venue. Underlying these motions were the allegations that (1) the justice assigned to preside was "biased" because the appellant "had previously appeared before [the justice] on at least two prior occasions" and (2) the "District Attorney's Office [because of prior criminal allegations] . . . may be biased and prejudiced." The denial of the motions is the first claim of error.

The appellant designated as the record on appeal, "the complete record of all the proceedings and evidence within the action." Rule 39(a), M.R.Crim.P. There is no suggestion of non-compliance and we assume, therefore, that the entire record is before us.

The record is silent on the first motion beyond the signed notation thereon of its denial. On the second motion the following appears: "Nov. 1, 1977—Impartial jury selected, motion is denied [s/ justice presiding]."

Since we have no record of the hearing on these motions, either by transcript or by reconstruction, appellate review of these obviously discretionary rulings is entirely inappropriate. *State v. Carney*, Me., 390 A.2d 521 (1978); *see also Tibbetts v. Carpenter*, Me., 391 A.2d 309 (1978).

II

Appellants moved for a continuance premised on the novel argument that, because other criminal cases were pending against him, defense counsel could not "adequately advise, represent or counsel the Defendant . . . in the pending case without a full disclosure . . . of all . . . information that is available to the State . . . in connection with the other alleged violations by the Defendant." This motion was denied.

In his brief appellant argues that the "complexity and multitude" of the other pending matters required granting a continuance. Citing *State v. Wardwell*, 158 Me. 307, 183 A.2d 896 (1962), he urges us to find that the denial of the motion for a continuance was an abuse of judicial discretion.

■ The offenses here in issue were committed on June 26, 1977, the indictment returned September 16, 1977, counsel being appointed on September 26th and trial was had on November 1 and 2, 1977. The facts, as will be revealed, were not complicated. We see no occasion to depart from the ultimate holding in *Wardwell*, namely:

The granting of a continuance in a criminal case based upon want of time to prepare a defense rests in the sound discretion of the presiding justice.

158 Me. at 310, 183 A.2d at 898–899.

■ How knowledge of other pending criminal charges (assuming there were such since we have nothing in the record to establish the truth of the allegation) would assist in the defense of the charges being tried is still as mysterious to us as it must have been to the justice below.

There was no error.

III

■ Appellant's motion for judgment of acquittal was denied, which ruling is also claimed to have been erroneous.

The jury could readily have found the following facts.

A dwelling owned by Mr. and Mrs. Virgil W. Tyler was entered and a "C.B. transphonic radio" was taken therefrom. Entry was attained by the appellant when, having discovered that the front door was locked and after no one had responded to knocking on the door, "[he] pushed the window in and reached in and unlocked the door." Subsequent to this entry Dwight Gould, Harding's cousin, removed the radio, being advised by Harding: "Don't rip it down . . . . They would notice it too quick."

The premises were then vacated by the appellant, Gould and a third companion, Ron Levesque. The three immediately drove away in Harding's car. Levesque next gave appellant $20.00 for the radio which was ultimately delivered to one Stephen Giroux in Fairfield, who testified, "They asked me if I knew anybody that wanted one [i. e., a C.B. radio], and I said that when I went to work I would ask."

The appellant did not testify and Ron Levesque refused to do so, stating: "I would like to plead the Fifth Amendment."

Although there was testimony that the initial purpose in going to the Tyler home was to call on a young lady, the jury could rationally infer that, on discovering no one at home and the door locked, a burglarious entry for purposes of theft ensued.

■ There was no error in denying appellant's motion for judgment of acquittal since resolving issues generated by the facts falls within the exclusive province of the jury. *State v. Blouin*, Me., 384 A.2d 702, 706 (1978).

## IV

■ The final point of appeal arises from an instruction given pursuant to a question asked by the jury after it had deliberated approximately one hour, namely: "Does the Defendant's intent to commit the theft have to be established before or after the entrance into the dwelling?"

In his charge in chief, the justice had defined the element of burglary,[1] noting that "we're not worried about the 'remaining on the premises'" aspect. The justice explained at some length the legal concepts of "entry," "dwelling house," "license or privilege to enter," and "was there an intent to commit a crime at the time he entered the premises." An instruction then ensued explanatory of specific criminal intent. However, although the jury could have so inferred, it was not told in specific language that the intent to commit theft must exist at the time of the unlawful entry.

There were no objections to the charge as given, nor were any requested instructions denied.

In response to the jury's question, the justice said:

So that, as I have explained to you, the elements, if he enters the dwelling place knowing that he is not privileged to do so, with intent—now that specifies that he has the intent when he enters . . . . .

The foregoing statement was correct. *State v. Field*, Me., 379 A.2d 393, 395 (1977).

However, the justice continued as follows:

But you do have this different situation that can exist as far as this same statute is concerned. If a person surreptitiously remains, once having gained entrance, if he remains in the premises, or the dwelling place, knowing he is not licensed to be there, and formulates the intent after surreptitiously remaining in there, knowing that he is not licensed to do so, he can have the intent at that time. So you have two different situations in that one offense. Entering with the intent, or surreptitiously remaining and formulating the intent, so you can have the intent in that respect.

Although given an opportunity to note any "errors or omissions," no objection was made to the above quoted instruction.

1. A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

17–A M.R.S.A. § 401(1).

Therefore, we limit our review to a determination of whether the instruction was so manifestly erroneous as to deprive the appellant of a fundamentally fair trial. *State v. Pomerleau*, Me., 363 A.2d 692, 697 (1976); see *Cayer v. Lane*, Me., 390 A.2d 467 (1978).

Appellant argues a failure to define the expression "surreptitiously remaining" and, additionally, that the comment in the charge in chief and the instruction given in response to the jury's questions are conflicting. This, appellant contends, results in manifest injustice. We disagree.

■ We agree, however, that an instruction on criminality arising from surreptitiously remaining on the Tyler premises was unnecessary since a factual basis underlying such a charge was completely absent. *State v. Cote*, Me., 362 A.2d 174, 178 (1976). There was no evidence that the appellant unlawfully remained on the premises surreptitiously, i. e., stealthily, secretly or clandestinely, after having entered. The three men simply entered the dwelling unlawfully, removed the C.B. radio, and left in what would appear to be, from the testimony, a continuous and uninterrupted course of conduct.

*Assuming* it was error to have given the instruction (not because the instruction per se was incorrect but because the facts did not generate any necessity therefor [2]), we cannot conceive that the trial was thereby rendered "fundamentally unfair." *State v. Barker*, Me., 387 A.2d 14 (1978).

The entry is:

Appeals denied.

Judgments affirmed.

McKUSICK, C. J., and GODFREY, J., did not sit.

2. A fair reading of the instruction discloses no obvious error. Although "surreptitious" may not be a commonly used word, it is not a word of art that has a unique legal definition. Throughout the Maine Criminal Code specific and special meanings are given to various words (e. g., 17–A M.R.S.A. § 2), but this word is not included, nor does 17–A M.R.S.A. § 401 give any limitation to its general meaning. We can assume that the justice would have defined the word if he had deemed it necessary in light of his knowledge of the particular jury panel.

We do not read any contradiction (as argued) between the charge in chief and the special instruction. The justice had merely pointed out initially that the element of violating Section 401 by surreptitiously remaining in the dwelling was not an element before the jury. The additional instruction merely focused on the distinction between the two methods of violating Section 401, stressing the fact that, in either event, a criminal intent must exist.