**STATE of Maine**

*v.*

**Randall SIMMONS.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1981.

Decided Oct. 16, 1981.

Charles K. Leadbetter, Linda Crawford, Anita St. Onge (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Steven C. Peterson (orally), Camden, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

ROBERTS, Justice.

Following a jury trial in Superior Court, Lincoln County, Randall Simmons was convicted of manslaughter, 17–A M.R.S.A. § 203. On appeal, Simmons questions the admission at trial of oral and written statements he made to police and the use at a pretrial hearing of an oral statement which the State failed to reveal to his defense counsel. We affirm the conviction.

The victim, Michael Simmons, and the defendant had been friends.[1] A few days prior to his death, Michael Simmons had made advances to the defendant's girlfriend, had convinced her to accompany him in his automobile, and had compelled her to kiss him before he would agree to take her home. The defendant's girlfriend told the defendant of her encounter with the victim.

On September 26, 1980, the defendant met the victim at the home of Robin Johnson, the victim's girlfriend in Waldoboro. The defendant arrived at the Johnson residence accompanied by Raymond Quimby and Kevin Brochu. Quimby was driving. The defendant got out of Quimby's car and was met by Michael Simmons who came out of the Johnson residence. Michael Simmons took a shirt belonging to the defend-

---

1. The victim was not related to the defendant.

ant from his car. An argument ensued. Michael Simmons then either began to hand the shirt to the defendant, or began to swing at him. Quimby and Brochu testified that the victim had an object in his hand.[2] The defendant then struck the victim on the side of the head. The blow knocked the victim to the ground where he landed on his face. The defendant then kicked or "stomped" the victim between two and seven times. Quimby and Brochu pulled the defendant away from the victim and the three men drove off in Quimby's car. The victim died two days later as a result of the injuries inflicted by the defendant.

The defendant on appeal claims that the Court erred in admitting oral statements he made to police officers following the incident, on the grounds that he was not informed that the statements he made could and would be used against him in a court of law. These statements were made shortly after the incident to Chief Judkins of the Waldoboro Police Department under circumstances which the trial judge assumed to be custodial interrogation. Judkins testified that he administered a *Miranda*[3] warning from memory in his police cruiser in the presence of Conrad McNaughton of the Maine State Police. He could not recall, however, whether he had specifically advised the defendant that anything he said could or would be used against him in a court of law. McNaughton testified that Judkins had, in fact, advised the defendant that anything he said could and would be used against him in a court of law. McNaughton testified he specifically remembered that Judkins advised him of that right as he was impressed at the time by Judkins' ability to recite *Miranda* warnings from memory.

 In a pretrial hearing, the Court was persuaded by McNaughton's testimony that Chief Judkins initially gave the defendant a complete *Miranda* warning. Even though the State's burden was less,[4] the justice noted that he was persuaded "beyond a reasonable doubt." That finding must be sustained because the record furnishes "rational support for the conclusions he reached." *State v. Stone*, Me., 397 A.2d 989, 995 (1979); *State v. Collins*, Me., 297 A.2d 620, 625 (1972).

The defendant also claims that the admission at trial of a written statement signed by him was error as it was not made voluntarily. At approximately 10:40 p. m., on the day of the incident Chief Judkins and Detective Rexford Kelley of the Maine State Police arrived at the Lincoln County Sheriff's Office where the defendant had been taken after his arrest. Kelley carefully advised the defendant in accordance with *Miranda*, and he waived his rights. Subsequent questioning lasted until approximately 12:30 a. m. The defendant was returned to his cell and Kelley's notes of the interview were typed into a statement for the defendant to sign. At approximately 2:15 a. m. the defendant was brought back out of his cell. Kelley again read to the defendant the *Miranda* warnings. The defendant filled out the heading of the statement. Thereafter, Kelley read the statement page by page to the defendant who made some minor changes and signed each page. The defendant signed the last page at approximately 2:45 a. m.

 After a pretrial hearing, the Court determined "beyond a reasonable doubt that all statements—both written and oral—and all waivers of *Miranda* rights—both written and oral—were indeed intelligently and knowingly and voluntarily made." The Court further determined that "I don't find that there is any influence whatsoever in the lateness of the hour in this case." The defendant argues, however, that the totality of the circumstances surrounding his written statement were such

---

2. At trial Quimby and Brochu testified that the victim swung at the defendant with a rock-like object in his hand. The victim's girlfriend, Robin Johnson, testified the victim had his back to the defendant when the defendant struck the victim.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. *See State v. Bleyl*, Me. 435 A.2d 1349, 1357– 1359 (1981).

as to compel a finding that the statements were not made voluntarily. Even if the totality of the circumstances surrounding the statement might have permitted the trial court to entertain a reasonable doubt as to the voluntariness of the written statement, we cannot say that the trial court was compelled to entertain such a doubt.

Here, the justice found that the defendant's statements were voluntary. *See State v. Collins*, Me., 297 A.2d 620. As we have recently stated in *State v. Bleyl*, Me., 435 A.2d 1349 (1981),

[i]t is apparent from the presiding justice's use of the word "voluntary" that he was applying the *Collins* standard of proof beyond a reasonable doubt to find that [the defendant] had suffered no due process violation during interrogation, *see State v. Collins, supra; State v. Theriault*, Me., 425 A.2d 986, 988 n.2 (1981), and to find that, after receiving *Miranda* warnings, [the defendant] had understood and willingly waived the fifth amendment rights guarded by the prophylactic rules of *Miranda. See State v. Gordon*, Me., 387 A.2d 611, 612 (1978).

435 A.2d at 1357.

■ While the lateness of the hour might make proof of voluntariness more difficult, ample evidence provided rational support for the finding of the Superior Court justice. The police carefully advised the defendant and the defendant acknowledged his understanding of his rights. The defendant was not intoxicated but appeared coherent, responsive and cooperative. No threatening, coercion or intimidation occurred. After the statement had been typed, Kelley again read the defendant the *Miranda* warning and the defendant signed the waiver form. As Kelley read the statement the defendant followed along nodding his head in agreement and making minor changes which both he and Kelley initialed. In light of this testimony, we find no merit to the appellant's argument that the statement was not voluntarily made.

The final issue the appellant raises on appeal concerns an incident which occurred during the pretrial hearing. On cross-examination, State Trooper McNaughton testified that when he arrived at the Waldoboro Police station the defendant was still relating parts of his story. McNaughton testified that the defendant stated at that time "he [the victim] won't be taking out my girlfriend again anyway." The defendant objected on the grounds that the statement had not been provided to him pursuant to M.R.Crim.P. 16(a). The assistant attorney general represented to the Court that she was not aware of the conversation that McNaughton had with the defendant until McNaughton had approached her and advised her of the conversation earlier that morning after Chief Judkins had been cross-examined. The Court admitted the statement for the purpose of the motion. Later, the State advised the Court that it did not plan to use the statement at trial.

■ On appeal, the State claims that the statement was not subject to discovery as it did not intend to use the statement *at trial.* Rule 16(a), however, provides for discovery of statements "intended to be used against the defendant." The Rule does not limit its scope to matters to be used at trial. This Court has articulated the underlying purpose of Rule 16(a) as enhancing the quality of pretrial preparation of both prosecution and defense and as diminishing the element of unfair surprise. *State v. Thurlow*, Me., 414 A.2d 1241, 1244 (1980); *State v. Mason*, Me., 408 A.2d 1269, 1273 (1979). To distinguish, as the State attempts to do, between use at a pretrial hearing and use at trial would defeat the purpose of the Rule.

■ The State also argues that it complied with the Rule as it did, in fact, disclose the statement in "a reasonable time." According to the State, "reasonable time" should be determined from the time the prosecutor learned of the statement. Furnishing a statement to the defendant at the outset of a trial could, therefore, according to the State, be reasonable. This argument ignores the prosecutor's obligation to make "a diligent inquiry of police agencies . . . as to whether such information does exist." *State v. Thurlow*, Me., 414 A.2d 1241, 1244 (1980); *State v. Flemming*, Me., 409 A.2d 220, 223 n.2 (1979).

**1094**

■ Once again we emphasize the obligation Rule 16 places upon the State. When diligent inquiry fails to reveal information and when that failure can be reasonably explained, the trial court may find late disclosure unavoidable. We caution, however, that failure of the prosecution to inquire as to the existence of discoverable evidence may lead to the unfortunate exclusion of highly probative evidence at pretrial hearings as well as at trial.

■ In the context of this case, however, we need not decide if the Superior Court erred in allowing the statement into evidence at the pretrial motion. The issues presented at the motion to suppress were whether Judkins had initially fully warned the defendant of his rights and whether the defendant voluntarily made the later written statement. . Except for the purpose of determining its admissibility, the statement that "he won't be taking out my girlfriend again, anyway" was entirely irrelevant to the issues raised at the hearing. The State did not use the statement at trial, nor did the defendant request additional time or a continuance under Rule 16(d) when confronted with the statement. *See State v. Hutchins*, Me., 433 A.2d 419, 421–422 (1981). The error, if any, was certainly harmless.

The entry is:

Judgment affirmed.

All concurring.