**STATE of Maine**

v.

**MICHAEL L.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1981.

Decided Feb. 23, 1982.

John D. McElwee, Dist. Atty. (orally), Houlton, Robert Bellefleur, Madawaska, for plaintiff.

William J. Smith (orally), Van Buren, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

ROBERTS, Justice.

The juvenile defendant, Michael L., appeals from an order of the Superior Court, Aroostook County, denying his appeal and affirming the judgment of the District Court, Van Buren, which adjudicated him to have committed the offenses of burglary, 17–A M.R.S.A. § 401, theft by unauthorized taking, 17–A M.R.S.A. § 353, and criminal mischief, 17–A M.R.S.A. § 806. We affirm the adjudication that the juvenile committed the offenses of burglary and theft and reverse the adjudication that the juvenile committed the offense of criminal mischief.

The adjudications as to burglary and theft relate to events which occurred on the evening of June 20, 1979, when Michael was 15 years old. On that date, Michael and seven other juveniles entered the Van Buren District Secondary School. There was testimony to the effect that the group went to the school, attempted to get inside through a window in the driver education room but failed as the window had been nailed shut. Michael then went home to get a hammer to open the window. One of the group entered the school through the window and opened a door to let the others in. The group eventually congregated in the teachers' lounge where a soda machine was located. One of the juveniles testified that when he arrived at the lounge the machine was either broken and open, or just in the process of being opened, and Michael was standing near it. Michael was one of the group to take soda out of the machine. Approximately six dollars were also taken from the machine. The Van Buren police chief testified that Michael admitted to being "involved in the Coke machine."

The second incident, which resulted in the complaint alleging criminal mischief, occurred in the fall of 1979 when Michael and other juveniles climbed onto the roof of a storage room attached to a public library. While on the roof they tore pieces of asphalt roofing off and threw them through the air.

## I. *Statutory Procedures*

The Van Buren police chief first learned of Michael's involvement in these episodes on March 1, 1980. On March 3, he informed the area intake worker that he was then investigating a number of juvenile cases. He interviewed Michael and his father on March 4 or 5. He testified that he was then investigating over twenty unsolved crimes at the time and still (on March 4 or 5) had quite a few leads to follow relating to this matter. On April 2 he turned twelve cases, including Michael's case, over to the intake worker.

Michael's counsel uses these facts to argue that the police failed to immediately notify an intake worker as required by 15 M.R.S.A. § 3203(1) and that he was, therefore, denied the benefits and protections of 15 M.R.S.A. § 3301.[1] We find no merit in this argument. The commentary to subsection 1 of section 3203 states the subsection "was amended in 1978 by P.L. 1977, c. 664 to require the officer to refer a case to an intake worker *once he has decided that juvenile court proceedings should be commenced against the juvenile.*" 15 M.R.S.A. § 3203 (Commentary—1979) (emphasis added). Here, the police were still conducting their investigation in March when Michael claims they should have referred the case to an intake worker. No decision had yet been made as to whether juvenile court proceedings should be commenced. We think it would indeed be anomalous to require police to refer cases to intake workers before they have even completed their in-

vestigations. Absent a showing of dilatory police practices, the word "immediate," as used in the statute, refers to that point in time at which the police have decided on the basis of their investigation that court proceedings should be brought. Defense counsel has made no showing that the referral was not here accomplished promptly and expeditiously.

## II. *Admissibility of Admissions Made By Michael L.*

Michael next attacks the admissibility at trial of his admission, given in the presence of the Van Buren police chief, that he had been involved with the break in the school and the theft from the soda machine. The appellant claims that the admission was involuntary, that promises of leniency were made to him and that the police chief deliberately used a parent to secure the admission.

The confession was made to the police chief in the presence of Michael's father. The chief gave Michael a *Miranda* card which Michael read and said he understood. The chief then advised Michael that he had information that Michael had been involved in the school incident. Michael didn't say anything. Michael's father then said: "Did you do this?" Michael replied that he had been involved in the incident at the school.

Defense counsel claims that the police used Michael's father "to cause a confession from the child" and that such conduct is contrary to fundamental fairness

---

1. 15 M.R.S.A. § 3203(1) provides:
 **Notification of intake worker.** When, in the judgment of a law enforcement officer, juvenile court proceedings should be commenced against a juvenile or a juvenile should be detained prior to his initial appearance in juvenile court, except in cases under Title 5, section 200–A, the law enforcement officer shall immediately notify an intake worker.
 15 M.R.S.A. § 3301 provides in pertinent part:
 **Preliminary investigation.** When a juvenile accused of having committed a juvenile crime is referred to an intake worker, the intake worker shall, except in cases in which an investigation is conducted pursuant to Ti-

tle 5, section 200–A, conduct a preliminary investigation to determine whether the interests of the juvenile or of the community require that further action be taken.
 On the basis of the preliminary investigation, the intake worker shall:
 A. Decide that no further action is required, either in the interests of the public or of the juvenile;
 B. Make whatever informal adjustment is practicable without a petition, provided that this paragraph does not apply when the juvenile is accused of having committed a juvenile crime pursuant to section 3103, subsection 1, paragraph E; or
 C. Request a petition to be filed.

and governmental fair play. The juvenile court did not find that the police conduct was coercive, nor do we. We have previously rejected a *per se* rule requiring the notification of an adult interested in a juvenile's welfare prior to interrogation in favor of a totality-of-the-circumstances test as the standard by which to measure the waiver of *Miranda* rights by a juvenile. *State v. Ann Marie C.*, Me., 407 A.2d 715, 724–25 (1979). *See Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979). Here, of course, the juvenile's parent was with him during the questioning and, indeed, asked the question which resulted in the juvenile's admission in the presence of the police officer. The police informed Michael of his rights but did not do so in the presence of Michael's father and, in fact, never informed Michael's father of his son's *Miranda* rights. Though it would be preferable to advise an adult interested in a juvenile's welfare of the juvenile's *Miranda* rights, as well as the interrogation itself, failure to do so does not mechanically render a subsequent waiver *per se* invalid. Failure to notify an adult of the juvenile's *Miranda* rights is a factor to be used, in addition to such factors as the juvenile's age, experience, education, background, intelligence, and capacity to understand his rights, *see Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979), in assessing whether a juvenile has effectively waived his *Miranda* rights. *Ann Marie C.*, 407 A.2d at 724. We do not, however, give such a failure dispositive weight. *Id.*

Following a hearing the District Court judge found beyond a reasonable doubt that the statements made by Michael were made freely and voluntarily. Applying the totality-of-the-circumstances test, we find rational support exists for that determination. *See State v. Bleyl*, Me., 435 A.2d 1349, 1358 (1981); *State v. Simmons*, Me., 435 A.2d 1090, 1092 (1981); *State v. Farley*, Me., 358 A.2d 516, 519 (1976). Here, we find nothing in the record which would have compelled

the conclusion that Michael's free will had been overridden by the question addressed to him by his father. *See Simmons*, 435 A.2d at 1093.

■ Michael has also argued that the police improperly promised him leniency in return for his admission. In *State v. Tardiff*, Me., 374 A.2d 598, 601 (1977) we held that "[a]n inducement to confess is improper when a promise of benefit or reward has been made or implied by one whom the accused could reasonably believe had the authority or power to execute it." Here, the evidence adduced merely indicated that the police explained juvenile proceedings to the juvenile and his father and that from this explanation they had an impression that the case would not go to court. The juvenile's father testified that his impression "was an assumption on my part." Michael testified that the chief "implied" and that he, Michael, "got the hint" that the case would not go to court but also testified that the District Attorney was mentioned during the conversation. We do not think that this evidence compelled a finding contrary to the one reached by the District Court judge. Although we expressly disapprove of the use of promises of leniency to obtain confessions, we also recognize the necessity of advising juveniles and their parents of the workings of the juvenile justice process. The line between information and implied promise is a fine one. We do not think, however, that the police here crossed that line. Rational support exists for the conclusion reached below that the admission was not a result of improper inducements by the police.

### III. Sufficiency of the Evidence
#### A. Burglary

■ 17–A M.R.S.A. § 401 establishes four elements to the offense of burglary.[2] The State must prove (1) entry (2) of a structure (3) with the knowledge that entry is not licensed or privileged and (4) with the

2. 17–A M.R.S.A. § 401 provides in pertinent part: "A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein."

intent to commit a crime therein. *See State v. Thibeault*, Me., 402 A.2d 445, 448 (1979). Here, the juvenile claims the State failed to prove the last of the above elements, *viz.*, that the juvenile at the time he entered the structure intended to commit a crime within the structure. *See State v. Field*, Me., 379 A.2d 393, 395 (1977).

The evidence showed that Michael, after obtaining a hammer to gain entry into the school, entered the school, shortly thereafter went to the teachers' lounge where the soda machine was located and participated in the breaking into the soda machine and the theft of money and soda from the machine. This evidence was sufficient to warrant the District Court judge as the factfinder in believing beyond a reasonable doubt that the juvenile had the intent at the time he entered the building to commit the crime of theft therein. *State v. Mann*, Me., 361 A.2d 897, 906 (1976); *see State v. Harding*, Me., 392 A.2d 538 (1978).

### B. *Theft*

■ Michael's admission, properly admitted at trial, that he was "involved with the Coke machine" disposes of any questions raised by the sufficiency of the evidence argument regarding the conviction for theft.

### C. *Criminal Mischief*

■ The petition charging the juvenile with criminal mischief, 17–A M.R.S.A. § 806, alleged that the juvenile did "intentionally and knowingly damage the property of SAD # 24" when he "tore roofing on the storage room of the Library and threw bricks against the wall, damaging the building." [3] Although evidence at trial indicated the juvenile did in fact climb upon the roof of a library, the State failed to present any evidence whatsoever that would have identified the library as the property of School Administrative District # 24 as alleged in the petition.

The State relies upon our decisions in *State v. Hamm*, Me., 348 A.2d 268, 274 (1975) and *State v. Bickford*, Me., 308 A.2d 561, 565 (1973) to argue that its failure in this regard is not fatal. In *Hamm* we noted that 15 M.R.S.A. § 752 "permits a conviction for any offense involving real property to stand if the State shows constructive or actual possession of the property by the person in whom the indictment alleged ownership." 348 A.2d at 274. Here, however, the State presented no evidence either of a direct or circumstantial nature which would have permitted the juvenile court to conclude beyond a reasonable doubt that ownership or lawful possession of the library building was in School Administrative District # 24 or any other entity. The prosecution's complete failure to thus identify the structure requires us to reverse the adjudication that the juvenile committed the offense of criminal mischief.

### IV. *Uniformity of Treatment*

■ The final issue raised in this appeal is the juvenile appellant's claim that the State failed to treat him in a manner substantially uniform to persons in like situations.[4] The parties stipulated that eight juveniles participated in the incident at the school and that Michael was the only juvenile to be adjudicated of having committed an offense as a result. Given the multiplicity of factors appropriately to be considered by (1) the police, (2) the intake worker, (3) the prosecutor and (4) the juvenile judge relative to the dispositions of juveniles accused of offenses, mere listing of disparate dispositions provides no basis for reversal.

The entry is:

Judgment of the Superior Court affirming the finding of the District Court that the juvenile committed the offenses of burglary and theft is affirmed.

---

3. 17 A M.R.S.A. § 806 provides in pertinent part that:

 A person is guilty of criminal mischief if, intentionally or knowingly, he:
 A. Damages or destroys the property of another. . . .

4. 15 M.R.S.A. § 3401(2)(B) provides: "[t]he goals of the juvenile appellate structure are . . . to insure substantial uniformity of treatment to persons in like situations. . . ."

Judgment of the Superior Court affirming the finding of the District Court that the juvenile committed the offense of criminal mischief is reversed. Remanded to the Superior Court for remand to the District Court with instructions to dismiss the juvenile petition alleging criminal mischief.

McKUSICK, C. J., and NICHOLS and WATHEN, JJ., concurring.

CARTER, Justice, dissenting in part and concurring in part.

I respectfully dissent in the Court's conclusion, in Part II of the majority opinion, that the inculpatory statements of this juvenile were admissible because freely and voluntarily made. I otherwise concur in the majority opinion.

Our prior rejection of "a *per se* rule requiring the notification of an adult interested in a juvenile's welfare prior to interrogation..." has no proper weight in deciding the issue postured in this case. The undisputed fact is that here the parent *was* present. I am satisfied that he was deliberately employed by the police officer as a catalyst to get the juvenile to confess his involvement in the crimes of burglary and theft. It is undisputed that the father did, in fact, act as such a catalyst. The juvenile did not respond on his own initiative to the officer's first interrogatory. He did so only after his father took up the cudgels of inquiry. It is undisputed that the father was not advised of the boy's rights.

The applicable reasoning is well stated by Justice Nix of the Pennsylvania Supreme Court in the very similar case of *Commonwealth v. Starkes,* 461 Pa. 178, ——, 335 A.2d 698, 703 (1975):

> Where an informed adult is present the inequality of the position of the accused and police is to some extent neutralized and due process satisfied. However, where the adult is ignorant of the constitutional rights that surround a suspect in a criminal case and exerts his or her influence upon the minor in reaching the

decision, it is clear that due process is offended. An uninformed adult present during custodial interrogation presents an even greater liability. The minor in such a situation is given the illusion of protection, but is in fact forced to rely upon one who is incapable of providing the advice and counsel needed in such a situation.

> Unless we require police officers to also advise parents, who are in the position to counsel *minor* suspects during custodial interrogation, we will not only fail to assure the full benefits sought to be attained by this type of counseling but we will also increase the likelihood that the suspect will be misinformed as to his rights.

> . . . .

> Whether the pressure to respond to police questioning flows from the overzealousness of the police *or the unadvised entreaties of a well-intentioned parent,* the result is equally offensive to our concept of due process and frustrates the protection sought to be provided by our Constitution.

(Footnote omitted.) (Emphasis added.)

To allow this conviction to stand would be to treat this juvenile as if he had no constitutional rights solely because his unadvised parent unwittingly permitted himself to be used as a foil for his son's undoing. Such a result does obvious violence to the juvenile's rights and demeans the father's understandable parental motives. I would vacate the convictions for burglary and theft.